1 | SEYFARTH SHAW LLP
Joshua A. Rodine (SBN 237774)
2 | jrodine@seyfarth.com
2029 Century Park East, Suite 3500
3 | Los Angeles, California 90067-3021
Telephone:     (310) 277-7200
4 | Facsimile:     (310) 201-5219

5 | SEYFARTH SHAW LLP
Jennifer A. Carver (SBN 228744)
6 | jcarver@seyfarth.com
601 South Figueroa Street, Suite 3300
7 | Los Angeles, California 90017
Telephone:     (213) 270-9600
8 | Facsimile:     (213) 270-9601

9 | Attorneys for Defendant
UMPQUA INVESTMENTS, INC.

10

11

12 | UNITED STATES DISTRICT COURT

13 | NORTHERN DISTRICT OF CALIFORNIA

14

15

16 | CLEMENT RICHARDSON, an Individual,

17 | Plaintiff,

18 | v.

19 | UMPQUA INVESTMENTS, INC., an Oregon
Corporation; and DOES 1 through 50, inclusive,

20

21 | Defendants.

22

23

24

25

Case No.

**NOTICE OF REMOVAL OF CIVIL
ACTION TO UNITED STATES
DISTRICT COURT PURSUANT TO 28
U.S.C. SECTIONS 1332 AND 1441**

[Contra Costa Co. Superior Court Case No.
CIVMSC21-00130]

[Filed concurrently with Civil Case Cover
Sheet, Corporate Disclosure Statement,
Certificate of Interested Parties, and
Declarations]

Complaint Filed: January 27, 2021
Complaint Served: March 18, 2021

26 |       To the United States District Court for the Northern District of California, Plaintiff, and his

27 | attorneys of record:

28

69103873v.5

Please take notice that Defendant Umpqua Investments, Inc. ("Umpqua" or "Defendant") hereby files this Notice of Removal pursuant to 28 U.S.C. sections 1441 and 1446, based on diversity of citizenship jurisdiction under 28 U.S.C. section 1332(a), in order to effectuate the removal of the above-captioned action from the Superior Court of the State of California, County of Contra Costa, to the United States District Court for the Northern District of California. Removal is proper for the following reasons:

## I.   BACKGROUND

1.     On January 27, 2021, Plaintiff Clement Richardson ("Plaintiff") filed a Complaint in the Superior Court of the State of California, County of Contra Costa, titled *Clement Richardson v. Umpqua Investments, Inc., an Oregon corporation; and DOES 1 through 50, inclusive*, Case No. CIVMSC21-00130 ("Complaint").

2.     The Complaint asserts causes of action against Umpqua Investments, Inc. ("Umpqua") for: (1) Race Discrimination in Violation of FEHA; (2) Failure to Prevent Discrimination in Violation of FEHA; and (3) Constructive Wrongful Termination in Violation of Public Policy.

3.     On March 18, 2021, Plaintiff served Umpqua with the Summons and Complaint. A true and correct copy of Plaintiff's Complaint served on Umpqua is attached as **Exhibit 1**.

4.     On April 15, 2021, Umpqua filed its Answer to the Complaint in Contra Costa County Superior Court. A true and correct copy of Umpqua's Answer filed in Contra Costa County Superior Court is attached as **Exhibit 2.**

5.     **Exhibits 1 and 2** constitute all of the pleadings served on Umpqua and/or filed by Umpqua in the state court action prior to filing this Notice of Removal. (Declaration of Joshua A. Rodine ["Rodine Dec."] ¶ 3.) Aside from the case management conference scheduled for June 22, 2021, there are no pending hearings currently scheduled in the Contra Costa County Superior Court in the state court action. (Rodine Dec. ¶ 3.)

## II.   TIMELINESS OF REMOVAL

6.     This Notice of Removal is timely because it is being filed within thirty days of any defendant's receipt of the Summons and Complaint on March 18, 2021. 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (explaining the time for filing a

2

notice of removal does not run until a party has been formally served with the summons and complaint under the applicable state law).

## III.   DIVERSITY OF CITIZENSHIP

7.      This is a civil action over which this Court has original jurisdiction under 28 U.S.C. section 1332(a)(1). Defendant may remove it from state to federal court pursuant to 28 U.S.C. section 1441(b) because this action involves citizens of different states and the amount in controversy exceeds the sum or value of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

8.      **Plaintiff Clement Richardson.** For purposes of determining diversity, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Inc.*, 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common law a party must … be domiciled in the state"). Residence is prima facie evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is prima facie the domicile"). Citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed") (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

9.      Objective facts that can establish Plaintiff's domicile include, but are not limited to, location of real property, place of employment, and payment of taxes. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("The courts have held that the determination of an individual's domicile involves a number of factors (no single factor controlling), including: current residence, voting registration and voting practices, location of personal and real property, location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, place of employment or business, driver's license and automobile registration, and payment of taxes").

10.     At the time Plaintiff filed this civil action, Plaintiff was a citizen and resident of the State of California. Plaintiff alleges in the Complaint that "[a]t all times material herein, Plaintiff, CLEMENT RICHARDSON was and is a resident of the State of California, County of Napa." (Compl. ¶ 1.) Plaintiff alleges he was employed by Umpqua within the State of California from approximately 2006 until August, 2020. (Compl. ¶¶ 11, 44.)

69103873v.5

11.     Plaintiff's home address during the period when he worked at Umpqua was within the State of California. (Declaration of Sherrie Kerr ["Kerr Dec."] ¶ 5.) There are no documents in Plaintiff's personnel file to suggest in any way that he is currently, or during the periods of his employment was, a domiciliary or citizen of any state other than California. (Kerr Dec. ¶ 6.)

12.     Plaintiff's admission that he is a resident of Napa County, California, his employment in California, and his personnel records all establish that Plaintiff is domiciled in California with no intent to depart. Thus, for purposes of diversity jurisdiction, Plaintiff is a citizen of the state of California.

13.     **Defendant Umpqua Investments, Inc.** Umpqua is, and at the time of the commencement of this action was, a corporation formed under the laws of the State of Oregon, with its headquarters and principal place of business in Portland, Oregon. (Kerr Dec. ¶ 7.)

14.     Umpqua is, and at the time of the commencement of this action was, a citizen of a state other than California within the meaning of 28 U.S.C. section 1332(c)(1). For purposes of diversity jurisdiction, a corporation is deemed a citizen of the state "by which it has been incorporated" and of the state "where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

15.     Umpqua is incorporated under the laws of the State of Oregon. (Kerr Dec. ¶ 7.) Furthermore, as shown below, Umpqua's principal place of business is, and has been at all times since this action commenced, located in the State of Oregon. (*Id.*)

16.     The United States Supreme Court held that when determining a corporation's principal place of business for diversity purposes, the appropriate test is the "nerve center" test. *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81, 92-93 (2010). Under the "nerve center" test, the "principal place of business" means the corporate headquarters where a corporation's high level officers direct, control and coordinate its activities on a day-to-day basis. *Id*. at 78. ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities").

17.     Under the "nerve center" test, Oregon emerges as Umpqua's principal place of business. Umpqua's corporate headquarters are located in Portland, Oregon where Umpqua's high level officers direct, control, and coordinate Umpqua's activities. (Kerr Dec. ¶ 7.) Umpqua's high level corporate officers maintain offices in Portland, and many of Umpqua's corporate level functions are performed in

4

the Portland office. (*Id.*) Therefore, for purposes of diversity of citizenship, Umpqua is, and has been at all times since this action commenced, a citizen of the State of Oregon. 28 U.S.C. § 1332(c)(1).

18.     Because Richardson is a citizen of California and Umpqua is a citizen of Oregon, complete diversity exists.

19.     **Doe Defendants.** Pursuant to 28 U.S.C. section 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. section 1332. *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *see also Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002) ("citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant"). Thus, the existence of Doe defendants one through fifty, inclusive, does not deprive this Court of jurisdiction.

## IV.   AMOUNT IN CONTROVERSY

20.     While Umpqua denies any liability as to Richardson's claims, the amount in controversy requirement is satisfied because Richardson seeks remedies far in excess of the $75,000 threshold. To begin with, Richardson seeks an amount that "**exceeds $25,000**." (Compl. ¶ 10.) (emphasis added).

21.     An action may be removed if the defendant establishes, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional amount. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007). To establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount, the defendant must provide evidence establishing that it is "more likely than not" that the amount in controversy exceeds that amount. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996).

22.     In determining the amount in controversy, the Court must consider the aggregate of general damages, special damages, punitive damages, and attorneys' fees. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory); *Davenport v. Mutual Benefit Health & Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages must be taken into account where recoverable under state law); *Conrad Assoc.'s v. Hartford Accident & Ind. Co.*, 994

DEFENDANT'S NOTICE OF REMOVAL

F. Supp. 1196, 1198 (N.D. Cal. 1998) ("amount in controversy" includes claims for general and special damages).

23.     As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (finding that the court may consider facts presented in the removal petition).

24.     In the Complaint, Richardson seeks to recover "loss of salary and benefits," "loss of earnings," "emotional distress," "attorneys' fees and costs," and "punitive damages." (Compl. ¶ ¶ 28, 29, 30, 31, 37, 38, 39, 40, 45, 46, Prayer for Relief.)

25.     **Compensatory Damages.** Richardson's compensation at the time of his resignation consisted of commission payments for the sale of investment products. (Kerr Dec. ¶ 4.) Richardson's annual earnings for 2019 were $180,678.47 or approximately $15,000 per month. (*Id*.) Richardson's annual earnings for 2020 were $136,166.29 or approximately $11,300 per month. (*Id*.)

26.     In the Complaint, Richardson alleges that he resigned from his employment with Umpqua in August 2020 (Compl. ¶ 44), and he seeks "loss of salary and benefits…." (Compl. ¶ 45.) To date, Richardson has already incurred approximately seven months of lost compensation. Assuming this case goes to trial in January 2022, which is one year from the time he filed his Complaint and seventeen months from the time he alleges the resigned, Richardson's lost compensation will total approximately $192,100. This amount does not include the value of benefits, nor does it include front pay.

27.     In addition to back pay, a plaintiff who prevails on a claim for wrongful termination or discriminatory discharge of employment may be entitled to either reinstatement or an award of "front pay" in lieu of reinstatement. *See, e.g.*, *Cassino v. Reichhold Chemicals, Inc*., 817 F.2d 1338, 1346 (9th Cir. 1997) (stating that a court has discretion to award front pay in lieu of reinstatement); *Secru v. Laboratory Corp. of America*, No. 3:09–cv–0619–LRH–RAM, 2009 WL 3755763, at * 2, n.3 (D. Nev. Nov. 9, 2009) (future lost wages alone can satisfy amount in controversy); *James v. Childtime Childcare, Inc*., No. Civ. S-06-2676 DFL DAD, 2007 WL 1589543, at *2, n.1 (E.D. Cal. June 1, 2007) (while courts evaluate the amount in controversy at the time of removal, future lost wages are properly considered in that calculation); *see also Crum v. Circus Circuit Enters*., 231 F.3d 1129, 1131 (9th Cir. 2000) (future damages are properly considered in determining amount in controversy).

28.     An award of three years' front pay would entitle Plaintiff to more than $406,800 in additional recovery. *See Traxler v. Multnomah County*, 569 F.3d 1007, 1015 (9th Cir. 2010) (upholding district court's decision to award nearly four years' front pay in a wrongful termination suit); *see also Glenn-Davis v. City of Oakland*, No. C 02-2257 SI, 2008 WL 410239, *4 (N.D. Cal. 2008) (finding three years of front pay "appropriate" in a discrimination suit); *Ackerman v. Western Elec. Co., Inc.*, 643 F. Supp. 836, 856 (N.D. Cal. 1986) (same). Thus, Plaintiff's allegations of lost wages alone exceed $901,000.

29.     **Alleged Discrimination and Constructive Discharge.** Richardson alleges that Umpqua discriminated against him because of his race such that he was forced to resign. (Compl. ¶¶ 20-31, 41-46.) Recent verdicts show that recovery in discrimination and constructive discharge cases typically exceeds $75,000. *See*, *e.g.*, *Pinter-Brown v. The Regents of the University of California*, BC624838, 2018 WL 1059156 (Los Angeles Sup. Ct. Feb. 15, 2018) (awarding $13,011,671 to employee who claimed she was constructively discharged and retaliated against for making a formal complaint about her colleagues, and was thereafter called a "diva" and an "angry woman" and was targeted in various work audits); *Cochran v. CBS Corporation*, BC432836, 2012 WL 6708605 (Los Angeles Sup. Ct. Nov. 21, 2012) (awarding $8,546,384 to former TV game show actress employee who alleged she was retaliated against for making complaints that she was being discriminated against because she was pregnant); *Hoeper v. City and County of San Francisco*,.CGC-15-543553,  2017 WL 1136098 (San Francisco County Sup. Ct. Mar. 17, 2017) ("jury found for the plaintiff and awarded her $601,630 in past lost earnings, $136,318 in future lost earnings, and $1,291,409 for emotional distress, mental anguish and humiliation"); *Carroll v. Armstrong*, 34-2012-00135527-CU-OE-GDS, 2016 WL 7094518 (Sacramento County Sup. Ct. Aug. 10, 2016) ("jury found for the plaintiff and awarded her $481,225.00 for past lost earnings, $932,200 for future lost earnings, $681,103 for future pension plan benefits, and $750,000 for emotional distress, pain and suffering"); *Hawkins v. City of Los Angeles*, 2016 WL 8649664, VX541066, (Los Angeles County Sup. Ct. Jun. 17, 2016) (plaintiff "was awarded $88,531 in economic damages and $150,000 in non-economic damages");

30.     Here, Plaintiff alleges in his Complaint that Umpqua discriminated against him because of his race and forced him to resign. (Compl. ¶¶ 20-31, 41-46.) The recent verdict awards cited herein

demonstrate that, for diversity purposes, the value of Richardson's discrimination claim exceeds the $75,000 amount in controversy requirement.

31.    **Emotional Distress Damages.** In addition to compensatory damages, Richardson claims emotional distress damages. (Compl. ¶¶ 29, 38, 46.) In *Thompson v. Big Lots Stores, Inc.*, No. 1:16-cv-01464-LJO-JLT, 2017 WL 590261, *4 (E.D. Cal. Feb. 13, 2017), the Eastern District of California made clear that "[i]n determining the amount in controversy, a court may assess likely emotional distress damages by reference to damages awards in similar discrimination cases." Applying that rule, the *Thompson* court found the defendant met its burden of showing that damages awards for emotional distress in analogous cases are often substantial, where the defendant pointed to a jury award of $122,000 in emotional distress damages to an employee who sued for discrimination and wrongful termination. *Id.*

32.    In fact, such damages may exceed $122,000. A review of jury verdicts in California demonstrates as much. *See*, *e.g.*, *Silverman v. Stuart F. Cooper Inc.*, No. BC467464, 2013 WL 5820140 (Los Angeles Sup. Ct. Jul. 19, 2013) (jury awarded $157,001 for emotional distress damages in discrimination case); *Vasquez v. Los Angeles Cnty. Metro. Transp. Auth.*, No. BC484335, 2013 WL 7852947 (Los Angeles Sup. Ct. Nov. 12, 2013) (award of $1,250,000 for pain and suffering to employee in violation of the CFRA and disability discrimination action); *Aboulafia v. GACN Inc.*, No. BC469940, 2013 WL 8115991 (Los Angeles Sup. Ct. Dec. 17, 2013) (pain and suffering award of $250,000, $250,000, $250,000, and $250,267 to four employees in discrimination action); *Welch v. Ivy Hill Corp.*, No. BC414667, 2011 WL 3293268 (Los Angeles Sup. Ct. Mar. 8, 2011) (award of $1,270,000 in pain and suffering to employee in an discrimination action); *Leimandt v. Mega RV Corp.*, No. 30-2010-00388086, 2011 WL 2912831 (Orange County Sup. Ct. Feb. 4, 2011) (jury awarded $385,000 in pain and suffering to employee in an discrimination case). These awards demonstrate that, for diversity purposes, the value of Plaintiff's alleged emotional distress damages exceeds the $75,000 amount in controversy requirement.

33.    **Punitive Damages.** Richardson also seeks punitive damages in connection with his claims. (Compl. ¶¶ 31, 40, Prayer for Relief.) Punitive damages may be included in the amount in controversy where they are recoverable under an applicable statute. *See Thompson*, No. 1:16-cv-01464-

69103873v.5

LJO-JLT, 2017 WL 590261, \*4 (E.D. Cal. Feb. 13, 2017) (stating that "[b]ecause plaintiff brings a claim under FEHA, and '[p]unitive damages are recoverable for FEHA violations,' punitive damages may be included in the amount in controversy here"). For purposes of determining the amount in controversy, the Court must assume that Richardson will prevail on his claim for punitive damages. *See Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 449-50 (S.D. Cal. 1995) (amount in controversy includes potential recovery of punitive damage award).

34.     Courts have affirmed jury verdicts exceeding $1,000,000 in punitive damages in alleged discrimination cases. *See*, *e.g.*, *Roby v. McKesson Corp.*, 47 Cal. 4th 686 (2009); *Thompson*, No. 1:16-cv-01464-LJO-JLT, 2017 WL 590261 at \*4 (citing to cases in which the plaintiffs were awarded punitive damages valued at $2 million and $800,000 for discrimination and retaliation cases under FEHA in finding that defendant "met its burden of showing that punitive damages awards in analogous cases often exceed the jurisdictional minimum on their own"); *Crangle v. Stanford Univ.*, JVR No. 802904, 2000 WL 33727181 (N.D. Cal. 2000) (punitive damages award of $200,000 where sole remaining claim was for retaliation based on making complaint of discrimination). Accordingly, Richardson's request for punitive damages shows that it is more likely than not that the amount placed in controversy by his Complaint exceeds $75,000.

35.     **Attorney's Fees and Costs.** Ramirez claims a statutory entitlement to attorney's fees. (Compl. ¶¶ 30, 39, Prayer for Relief.) Attorney's fees are properly considered in calculating the amount-in-controversy for purposes of removal on grounds of diversity jurisdiction. *Galt*, 142 F.3d at 1156 (claims for statutory attorney's fees to be included in amount in controversy, regardless of whether such an award is discretionary or mandatory). Under California Government Code section 12965(b), the court in its discretion may award fees and costs to the "prevailing party" in FEHA actions. Although the statute provides that the court "may" award fees, cases hold that a prevailing plaintiff is entitled to fees "absent circumstances that would render the award unjust." *Horsford v. Bd. of Trs. of Cal. State Univ.*, 132 Cal. App. 4th 359, 394 (2005). Here, Plaintiff asserts two FEHA claims against Defendant in the Complaint. (Compl. First and Second Causes of Action.)

36.     And, attorney's fees in discrimination cases also routinely exceed the requisite amount in controversy. *See*, *e.g.*, *Denenberg v. Cal. Dep't of Transp.*, GIC836583, 2006 WL 5305734 (San Diego

County Sup. Ct. Sept. 16, 2006) (attorney's fees award of $490,000 for claims including discrimination, harassment, and retaliation); *McMillan v. City of Los Angeles*, BC298898, 2005 WL 3729094 (Los Angeles County Sup. Ct. Apr. 22, 2009) (attorneys' fees award of $504,926 in case alleging discrimination and retaliation).

37.     In light of Richardson's allegations, Umpqua anticipates that the Parties will propound written discovery and depositions will be taken in this case. Umpqua also intends to file a Motion for Summary Judgment, which Richardson will likely oppose. So, if Umpqua prevails, he could be entitled to an award of attorney's fees that alone is "more likely than not" to exceed $75,000.

38.     **Punitive Damages.** Plaintiff also seeks punitive damages in the Complaint. (Compl. ¶¶ 31, 40, and Prayer for Relief.) The Court must also consider Plaintiff's request for punitive damages in determining the amount in controversy. *Davenport v. Mutual Benefit Health and Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963) (punitive damages must be taken into account where recoverable under state law). "Because plaintiff brings a claim under FEHA, and '[p]unitive damages are recoverable for FEHA violations,' punitive damages may be included in the amount in controversy here." *Thompson*, 2017 WL 590261 at *4.

39.     Courts have affirmed jury verdicts exceeding $1,000,000 in punitive damages in alleged race discrimination cases. *See*, *e.g.*, *Leggins v. Thrifty Payless, Inc.*, BC511139, 2015 WL 4748037 (Los Angeles County Sup. Ct. Jul. 17, 2015  ($5 million verdict for plaintiff in race discrimination case); *see also Moland v. McWane Inc.*, BC559796, 2017 WL 3393489 (Los Angeles County Sup. Ct. June 29, 2017) ($13.8 million verdict for plaintiff in race discrimination case).

40.     In sum, Plaintiff's aggregated recovery on his claims, including compensatory damages such as lost wages and emotional distress damages, attorney's fees, and punitive damages, satisfies the $75,000 jurisdictional threshold. While Defendant denies any liability as to Plaintiff's claims, it is "more likely than not" that the amount in controversy in this action exceeds $75,000, exclusive of interest and costs, as required by 28 U.S.C. section 1332(a).

69103873v.5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V.   VENUE

41.     Venue lies in the Northern District of California, Eastern Division, pursuant to 28 U.S.C. sections 1441, 1446(a), and 84(a). This action originally was brought in the Superior Court of the State of California for the County of Contra Costa, which is located within the Northern District of California.

## VI.   INTRADISTRICT ASSIGNMENT

42.     Plaintiff alleges his claims arose in the County of Contra Costa. (Compl. ¶ 2.) Assignment to the San Francisco or Oakland divisions of this Court is proper under Local Rule 3-2.

## VII.   NOTICE OF REMOVAL

43.     Pursuant to 28 U.S.C. section 1446(d), written notice of the filing of this Notice of Removal will be given promptly to Plaintiff and, together with a copy of the Notice of Removal, will be filed with the Clerk of the Superior Court of the State of California for the County of Contra Costa. This Notice of Removal also will be served on counsel for Plaintiff, and a copy of the Proof of Service will be filed shortly after these papers are filed and served.

## VIII.   PRAYER FOR REMOVAL

44.     Wherefore, Umpqua prays that this civil action be removed from the Superior Court of the State of California for the County of Contra Costa to the United States District Court for the Northern District of California.

DATED: April 15, 2021                                      SEYFARTH SHAW LLP


                                                   By:  */s/ Joshua A. Rodine*
                                                         Joshua A. Rodine
                                                         Jennifer A. Carver
                                                         Attorneys for Defendant
                                                         UMPQUA INVESTMENTS, INC.

11

69103873v.5